IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

- - - - - - - - - - - - - - x
In Re:                         :        11-27950 ABC
                               :        (Chapter 7)
RANDY STEPHEN GOLDENHERSH,      :
                               :
          Debtor.              :
- - - - - - - - - - - - - - x

Courtroom C-205

U.S. Bankruptcy Court
721 19th Street
Denver, CO 80202

October 17, 2012

**TRUSTEE'S MOTION TO APPROVE AGREEMENT
TO SETTLE CLAIM OF ESTATE AND DEBTOR'S OBJECTION THERETO**

BEFORE THE HONORABLE A. BRUCE CAMPBELL, JUDGE


<u>APPEARANCES</u>:

For Chapter 7 Trustee:        DAVID E. LEWIS, ESQ.
                              1314 Main St.
                              Louisville, CO 80027
                              *(Via Telephone)*


FOR DEBTOR:                   JENNY M.F. FUJII, ESQ.
                              303 E. 17th Ave., Suite 500
                              Denver, CO 80203
                              *(Via Telephone)*


FOR AURORA LOAN SERVICES,     JAMES P. ECKELS, ESQ.
LLC:                          410 17th St., Ste 2400
                              Denver, CO 80203
                              *(Via Telephone)*


FOR KEITH STEFAN:             IVAN CALL
                              950 S. Cherry St., Ste. 710
                              Denver, CO 80264


Proceedings recorded by electronic sound recording,
    Transcript requested 12/18/12 by *Randy Goldenhersh, Esq.*
    Transcript provided 12/20/12 by VERBATIM DIGITAL REPORTING
    Cost of Transcript: $77.60 ($4.85 ~ Expedited)

1                      P R O C E E D I N G S

2                    (Court called to order)

3              THE COURT:  Please be seated.

4              THE CLERK:  Your Honor, appearing telephonically

5    this morning on the Goldenhersh matters are Ms. Jenny Fujii,

6    Mr. David Lewis, Mr. James Eckels.  Here in the courtroom is

7    Mr. Ivan Call.  We are on the record.

8              THE COURT:  Thank you.  Ms. Fujii, Mr. Lewis,

9    Mr. Eckels, this is Judge Campbell; can you hear me?

10             MR. ECKELS:  Yes, Your Honor.

11             MR. LEWIS:  Yes, I can.

12             MS. FUJII:  Yes, Your Honor, I can hear you.

13   This is [inaudible].

14             THE COURT:  Thank you.  Ms. Fujii, you're coming

15   rather -- rather faintly.  If you could turn up the volume

16   or whatever.

17             But we are convened this morning on the Court's

18   non-evidentiary calendar in the Chapter 7 proceedings of

19   Randy S. Goldenhersh.  Mr. Goldenhersh's case is our Docket

20   Number, for the record, 11-27950.  And we're set this

21   morning on the Chapter 7 trustee's motion to approve an

22   agreement which would authorize the trustee to settle a

23   claim of the estate.  The debtor has filed an objection.

24             We have participation both telephonically as was

25   invited in the Notice of this morning's hearing and we have

1   counsel here in the courtroom as well.  Let's get

2   appearances on the record, please.

3            MS. FUJII:  Good morning, Your Honor.  This is

4   Jenny Fujii appearing on behalf of the debtor, Mr.

5   Goldenhersh.  Is this volume a little better, Your Honor?

6            THE COURT:  Yeah, that's fine.

7            MR. LEWIS:  And good morning, Your Honor.  This

8   is David Lewis appearing as Chapter 7 trustee in this case.

9            THE COURT:  And you -- Mr. Lewis, you are the

10  trustee, correct?  And you're appearing pro se?

11           MR. LEWIS:  Yes.

12           THE COURT:  Thank you.

13           MR. ECKELS:  Good morning, Your Honor.  This is

14  James Eckels on behalf of Aurora Loan Services.  With me is

15  Jamie Siler who also represents Aurora.

16           THE COURT:  Good morning, gentlemen.

17           MR. CALL:  Your Honor, my name is Ivan Call.  I

18  represent Keith K. Stefan.

19           THE COURT:  I'm sorry, you represent whom?

20           MR. CALL:  Keith Stefan, he is the homeowner.

21           THE COURT:  And a defendant in some of the

22  litigation that's being resolved?

23           MR. CALL:  In the Arapahoe County District

24  Court, yes.

25           THE COURT:  Thank you, Mr. Call.  Mr. Lewis,

1    it's your Motion, go ahead.

2             MR. LEWIS:  Well, Your Honor, there -- there is

3    a bunch of litigation that this Motion would -- that

4    approval of this would settle a bunch of ending litigation

5    which is all listed in the Settlement Agreement itself.  And

6    without going into great detail and if great -- greater

7    detail is necessary, maybe counsel for some of the parties

8    would be happy to speak on that issue.  But my sense of all

9    of this is that the debtor holds a losing hand in this

10   litigation.  And, of course, the debtor's position is quite

11   different.

12            This involves efforts by the lenders to

13   foreclose on real property owned by the debtor.  And my

14   sense is at the end of the day, even if he were to be

15   successful in stopping or reversing some of these

16   foreclosure proceedings, it still doesn't entirely remove

17   the lien from the property.  And along with that, there's

18   the issue that the -- this is obviously complex,

19   multifaceted litigation and at this point the estate has no

20   other money to fund counsel to protect the debtor's

21   interests.

22            This Motion came about as a result of a bidding

23   process that I initiated involving the litigants, including

24   the debtor, and the debtor and the litigants both had an

25   opportunity to offer to pay to acquire the estate's claims

1    in order to either shut them down or to proceed with them.

2              And the debtor did participate in bidding on

3    this proposal.  Eventually, a higher bid was realized from

4    the other parties and that was the one I proposed to the

5    Court.  I understand from the debtor's Objection that he

6    thinks that the amount I'm willing to accept is too low.

7    But at some point we need to have closure on this.  And I

8    guess if the debtor is now offering to pay some higher

9    amount than he was previously willing to do, maybe the

10   resolution is to have a auction conducted in the courtroom

11   and let each party submit its best bid at that time and be

12   done with it.  So that would be my position on this.

13             THE COURT:  Ms. Fujii.

14             MS. FUJII:  Yes, Your Honor, thank you.  This is

15   Jenny Fujii.  I generally agree with everything Mr. Lewis

16   has represented to the Court except for one significant

17   fact.  The debtor was never given an opportunity to bid on

18   this particular settlement.  In fact, the debtor was

19   surprised and I was surprised to this Motion being filed.

20   So I'm not sure if Mr. Lewis is confused with respect to

21   some sort of communication related to other litigation and

22   settlement, but the debtor has never had an opportunity to

23   even review any sort of bid on [inaudible] make any

24   counterbid.

25             And I agree with Mr. Lewis.  If he is willing to

1   set forth some sort of fair bidding procedures, the debtor

2   will participate and is willing to bid more than what these

3   parties are offering to [inaudible].

4            The debtor, Your Honor, has been litigating

5   these claims on his own since 2009.  And he -- he is willing

6   to take risks that the trustee isn't willing to take to

7   continue to pursue these claims.  He just needs to have an

8   opportunity to bid against what is proposed to the Court.

9   And, you know, for the benefit of the estate, the more money

10  that the estate can get it would be better for the estate

11  and the debtor has no problem with the concept of selling

12  these things, he just wants a fair shot at being able to

13  purchase it.

14           MR. ECKELS:  Your Honor, if I may, this is James

15  Eckels.  This is a few points from our perspective on this

16  as well.

17           First, the debtor's moved to dismiss this case

18  and this Settlement Agreement was reached back in July.

19  There have been no efforts as far as we have heard to make a

20  larger bid after this settlement was signed by both parties

21  and put to this Court for approval.

22           In addition, Ms. Fujii mentioned that this type

23  of litigation has been going on since 2009.  In every single

24  case that the debtor has raised, we've seen claims

25  challenging the standing of Aurora to foreclose.  Every

1    court has denied and just rejected those arguments and

2    dismissed the case.  I can -- I can go through, you know, at

3    least eight different cases on the state level, federal, the

4    Federal Court of Appeals in the Tenth Circuit and the

5    Colorado Court of Appeals have all rejected these arguments.

6          And essentially, the money that we're willing to

7    pay the trustee is really nuisance value.  We're trying to

8    stop the debtor from, in the future, coming at us with these

9    same claims that have been rejected and causing us to incur

10   additional attorneys' fees.

11         And on that last point, because all of these

12   cases have been already decided, with the exception of the

13   debtor's recent petition for Writ of Certiorari in the

14   Colorado Supreme Court, any new claims, any new course of

15   litigation, or if you want to determine voluntarily

16   returning to the fray as some courts have put it, our

17   position is that debtor, or the estate, whoever pursued

18   these claims, would be liable for post-petition attorneys'

19   fees for bringing these frivolous claims that have already

20   been rejected and dismissed with prejudice.

21         THE COURT:  Thank you.  Ms. Fujii, I'm looking

22   at a Certificate of Mailing that's dated back two months ago

23   where the deal that the trustee is trying to put together,

24   and seeking authority from the Court to enter into was

25   served on you back in early August.  Certainly -- I mean,

1   how then is it the debtor's position that there was no time

2   to come forward and offer more than the $8,000 that the

3   trustee's trying to resolve this for?

4          And let me ask you a two-part question.  And

5   secondly, why does the debtor have any standing in this

6   matter if we're talking about a claim the trustee is trying

7   to settle for nuisance value at $8,000, and the debtor's had

8   two months to bring someone forward or come forward himself

9   and hasn't done so?

10          It certainly suggests that this claim has value

11   that is not likely to turn this into a solvent estate.  I

12   mean, the proof being in the pudding as far as the debtor is

13   concerned, having not presented the trustee with more than

14   $8,000, why should the debtor be heard in this at all?

15   Isn't it the concern of the debtor's creditors and not the

16   debtor?

17          MS. FUJII:  Your Honor, I appreciate your

18   comments.  To address your question about why the debtor

19   hasn't counter-offered since the date the trustee filed his

20   Motion which was August, I think, of 2012, is because debtor

21   had discussed issues with the trustee about settling

22   [inaudible] this claim which is another lawsuit claim, and

23   has tried to encourage the trustee to have some sort of

24   structure as far as his bidding process is concerned.

25          And the reason why the debtor hasn't already

1    gone forward and made another offer to the trustee is kind

2    of moot at this point, because he's willing to, first of

3    all, to offer more than the $8,000 that's currently on the

4    table.  And second, he is -- there should be some sort of

5    process that is fair and equitable to -- for the benefit of

6    the estate to obtain the maximum amount of funds to the

7    estate.

8              And I guess my biggest problem with this is that

9    the representations made in the Motion that he did have an

10   opportunity prior to filing this Motion is just not correct.

11             As far as the debtor's standing to object to

12   these -- the settlement of the claim, the debtor has an

13   interest in pursuing these claims as the party to the

14   litigation.  And I understand perfectly, Your Honor, that

15   the [inaudible] are property of the estate.  And the trustee

16   does have full control over these claims.

17             However, for the purpose of fairness and

18   resolving these claims, as mentioned by counsel for Aurora

19   Loan Services, they -- you know, they believe all of these

20   claims have been resolved anyway.  So it's questionable why

21   they're -- with that representation, why they're willing to

22   offer any money.  But from the debtor's perspective, his

23   claims are valid, it's a serious issue, and he was going to

24   pay more to the estate to pursue them.

25             THE COURT:  Thank you.

1           MR. ECKELS:  Your Honor, if I may just address a

2   point just briefly, Ms. Fujii.

3           THE COURT:  Who is that?  Is this Mr. Eckels?

4           MR. ECKELS:  Yes, this is Mr. Eckels on behalf

5   of Aurora.

6           THE COURT:  Go ahead.

7           MR. ECKELS:  I just want to point out that

8   during the settlement negotiations with the trustee, two of

9   the cases were resolved, you know, in the negotiation.  We

10  still would like to go forward with this.  We still believe,

11  you know, we are getting something of value out of it just

12  given the litigious nature of the debtor here.

13          We don't -- we think that regardless of, you

14  know, the fact that he is willing -- the argument to

15  continuously rejected in at least eight different

16  proceedings, that that's not going to stop him.  And, you

17  know, we feel like a settlement here on all his claims is

18  [inaudible] even further for us.  It's possible he may still

19  try and pursue them after the settlement, but we think it's

20  in our best interest to try and settle these claims for a

21  nuisance value.

22          In addition,  it strikes me as a little

23  disingenuous, the arguments made by Ms. Fujii.  The debtor

24  has moved to dismiss his case, his bankruptcy case here.  It

25  does not seem that the debtor is trying to maximize any

1   value to the creditors of the estate.  It sounds like he

2   just wants to keep being able to pursue this line of

3   litigation, perhaps on principle, I'm not sure.  They have

4   been rejected continuously, as I've mentioned earlier.

5            THE COURT:  Thank you.  Mr. Lewis, your Motion,

6   you have the final word if there's anything to add.

7            MR. LEWIS:  Well, Your Honor, I do want to rebut

8   some of what has been said.  I don't want to turn this into

9   something resembling one of these presidential debates.

10           But you know, the claim that the debtor didn't

11  have an opportunity to bid on this, I would say that's just

12  untrue, unless there was some disconnect between what Ms.

13  Fujii thought I was offering and what her client thought he

14  was bidding on.  But my intent was that his -- his

15  participation was to settle these claims that are described

16  in the Settlement Agreement.  And as I said, maybe -- you

17  know, until we had the Settlement Agreement written, it

18  wasn't as specifically defined as it -- as it ended up

19  being.

20           But there was definitely a back and forth

21  between the parties and an exchange of bids in which the

22  debtor made bids and I would relay those to the other party,

23  they would then counter and he would counter back with

24  another bid and that was the process.  So unless there was

25  just a complete disconnect about what we were talking about,

1    I would dispute what Ms. Fujii was saying.

2              But that doesn't -- that doesn't resolve this.

3    And I think that clearly the problem is, I don't have a

4    higher bid than the 8,000 that's been offered.  It just

5    hasn't happened since the Motion was filed.  And if it were

6    to happen today, I'm not sure that I could be assured that

7    the money is going to be there and know that it would

8    closed.

9              So if there's going to be some other process to

10   get this resolved, I'd suggest that we have to have

11   something like a cashier's check on deposit, and then a

12   court date set and this is the auction and everybody can

13   show up with their money and the best bid takes it.  But at

14   this point, there isn't a higher bid.  In actuality, there's

15   just the suggestion that the debtor thinks its worth more.

16             THE COURT:  Thank you, Mr. Lewis.

17             MR. LEWIS:  So I don't know where that leaves

18   us.

19             THE COURT:  Thank you.  I am prepared to rule on

20   this Motion.

21             Before the Court is the Chapter 7 trustee's

22   motion seeking authority to settle claims that are property

23   of this bankruptcy estate.  These claims relate to a series

24   of litigations that had been initiated by the debtor against

25   numerous parties.  The Court has before it an Objection that

 1    has been filed by the debtor saying essentially he doesn't

 2    think the trustee is getting enough for the estate, that

 3    he'd like to buy the claims or that why doesn't the trustee

 4    go out and get a contingent fee lawyer and pursue them.

 5              The Court has serious questions -- also the

 6    Court has heard from one of the defendants in the litigation

 7    the trustee is seeking to settle, and the settlement that is

 8    proposed is for $8,000 to be received from some of the

 9    defendants in order to dispose of those claims, and while

10    they are property of the estate, to actually put an end to

11    the claims.

12              The Court has some question about whether either

13    the debtor or the defendant who has -- the Court has allowed

14    to speak this morning -- have any standing to do so.  There

15    is no indication that this is a solvent estate, and that

16    there is an economic interest of the debtor in the estate

17    and in this Motion, or in the relief that the trustee seeks.

18    There's no indication that the defendant who has been

19    allowed to participate today is a creditor or otherwise a

20    party-in-interest.  The real parties-in-interest in this, in

21    addition to the trustee, are the unsecured creditors in this

22    estate.  And the record in this case indicates that they

23    have been served with notice, and that they have not chosen

24    to object.

25              The trustee has evaluated the claims and

1    evaluated the cost.  His -- the trustee has indicated that

2    in addition to evaluating the cost to the estate and looking

3    at the resources that are available to the trustee, that the

4    trustee has looked at the risks involved and has, right or

5    wrong in his judgment, exercising his discretion as a

6    Chapter 7 trustee, has determined that disposing of these

7    claims for the $8,000 that he has been offered is in the

8    best interest of the estate.

9            The debtor has indicated that he wishes that

10   there was a -- or desires that there was a formal auction

11   process.  The record indicates that the trustee has noticed

12   the debtor with respect to his proposed disposition of these

13   claims for a mere $8,000, and for whatever reason it has not

14   resolved it, and the debtor or anybody else coming forward

15   and putting on the table more for the trustee.

16           The Court has some reservation, although this is

17   a slope I'm not willing to step out on, about the notion of

18   auctions of litigation.  That has profound public policy

19   implications when -- particularly when you're talking about

20   putting up for bid litigation claims, tort claims.  I'm

21   talking about assignment of contract claims or assignment of

22   proofs of claim, something in which this market has seemly

23   or unseemly a multi-billion dollar market in.

24           But tort claims have their own implications.

25   And as I say, that's an area the Court is unwilling to

1    plunge into.  I think beyond -- if under applicable

2    non-bankruptcy law, the claims are assignable, and perhaps

3    that's the only limitation, to the extent they wouldn't be

4    assignable under non-bankruptcy law.  It's just -- while, as

5    I say, it gives the Court some pause, I don't know how to

6    deal with the practical problems that a trustee faces when

7    he has, as part of his job, the liquidation of tort claims.

8              Under the circumstances of the undisputed facts

9    as presented, and the arguments of the trustee, and noting

10   that this matter has been duly noticed without objection

11   from creditors of this estate, and for the reasons that the

12   Court has just stated, I will grant the trustee's motion and

13   the trustee is granted authority to dispose of the claims

14   that are the subject of the motion before the Court in

15   accordance with the terms of the settlement that is attached

16   to the Motion.  Thank you.

17             MR. LEWIS:  Thank you, Your Honor.

18             MR. CALL:  Thanks, Your Honor.

19             MR. ECKELS:  Thank you, Your Honor.

20             MS. FUJII:  Thank you, Your Honor.

21             (Proceeding was concluded at 9:33 a.m.)

22                    *    *    *    *    *

23

24

25

## CERTIFICATE

I certify that the foregoing is a correct transcript from the electronically recorded **TRUSTEE'S MOTION TO APPROVE AGREEMENT TO SETTLE CLAIM OF ESTATE AND DEBTOR'S OBJECTION THERETO,** held on October 17, 2012, U.S. Bankruptcy Court, 721 19th Street, Denver, CO 80202, in the above-entitled matter.

/s/ Julie Lord

December 20, 2012        _____
                         Julie Lord
                         Verbatim Digital Reporting, LLC
                         3317 W. Layton Ave.
                         Englewood, CO 80110
                         (303) 915-1677